```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                          NORTHERN DIVISION
                           AT COVINGTON
```

CIVIL ACTION NO. 2011-04 (WOB-CJS)

KIM BRAKE, Executrix of the Estate
Of Billie Faye Hamilton                                    PLAINTIFF

VS.                     **MEMORANDUM OPINION**
                            **AND ORDER**

SHELTER MUTUAL INSURANCE COMPANY[1]                        DEFENDANT


This matter is before the Court on the parties' cross Motions for Summary Judgment (Docs. 26, 28), as well as the parties' supplemental filings (Docs. 37, 38). The Court heard oral argument on these motions on April 9, 2012 and thereafter took the motions under submission. (Doc. 36).

Having reviewed the matter further, the Court now issues the following Memorandum Opinion and Order. For the following reasons, Plaintiff's Motion for Summary Judgment (Doc. 28) will be **granted**, and Defendant's Motion (Doc. 26) will be **denied.**

*Factual and Procedural Background*

The parties agree that the material facts are not in dispute. This action arises from Defendant Shelter Mutual Insurance Company's ("Defendant") denial of coverage under a Homeowner's Insurance Policy.

---

[1] Plaintiff identified Defendant as "Shelter Insurance Companies" in her Complaint. According to Defendant, the correct name is "Shelter Mutual Insurance Company." (Doc. 26., at 1).

The decedent, Billie Faye Hamilton, owned and resided in a home insured by Defendant. On July 16, 2010, Ms. Hamilton's daughter, Kimberly Brake, and Ms. Brake's daughter moved in with Ms. Hamilton. On that same day, Ms. Hamilton became ill and was admitted to the hospital, where she remained until her death on July 30, 2010. Prior to falling ill, Ms. Hamilton had paid the premium on the Policy, and this payment insured the property through December 2010.

Ms. Brake and her daughter continued living in Ms. Hamilton's home after her death.[2] It is undisputed that, upon the death of Ms. Hamilton, the title to the real estate vested in Ms. Brake and her brother, and that she had her brother's consent to reside there. Ms. Brake attempted to contact Ms. Hamilton's insurance agent once in August 2010 to notify her of Ms. Hamilton's death, and she left a message on the agent's answering machine. (Doc. 31, Brake Depo., at 12). However, this message did not relay that Ms. Hamilton had died, and it is unclear whether Ms. Brake left a phone number where she could be

---

[2] Per Ms. Hamilton's will, Ms. Brake and her brother, Mr. Hamilton, were equal beneficiaries of the estate. (Doc. 31, Brake Depo., at 47). Ms. Brake testified that Mr. Hamilton intended to sign his share of the house over to her. (*Id.*).

reached.[3] (*Id*. at 12, 51). She did not, however, attempt to call the agent again. (*Id*. at 19-20).

Additionally, an obituary notice appeared in the local newspaper. (Compl. at ¶ 8). Although Ms. Hamilton's insurance agent subscribes to this paper, the agent testified that she did not learn of Ms. Hamilton's death until after the claim at issue was made. (Doc. 32, Darby Depo., at 35).

On November 14, 2010, a fire destroyed a portion of the house. Ms. Brake notified Defendant of the claim this same day. Defendant ultimately denied coverage based on its contention that the policy had lapsed because it had not received notice of Ms. Hamilton's death.

On December 2, 2010, Ms. Brake, as executrix of Ms. Hamilton's estate, filed this action against Defendant for damages based on the denial of coverage. Both parties filed Motions for Summary Judgment. During oral argument on these motions, the Court provided the parties with the opportunity to file supplemental authority, which both parties did.

### *Analysis*

**A.    The Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides in relevant part that: "[t]he court shall grant summary judgment

---

[3] Ms. Brake testified that the machine beeped during the message, and so she was unsure whether her phone number was included. (*Id*. at 51).

3

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In this case the material facts are not in dispute and all issues are matters of law for the Court.

**B.     The Policy is Ambiguous**

At issue is whether the Policy covered the fire loss. Defendant contends that it did not because Ms. Brake failed to notify Defendant of Ms. Hamilton's death as required for coverage to continue and, in any event, coverage terminated thirty days after Ms. Hamilton's death per the express terms of the Policy. Ms. Brake contends that the Policy is ambiguous because it contains conflicting provisions, and thus the Court should interpret the Policy as providing coverage for the loss.

The cornerstone of Kentucky insurance law is the following proposition:

> Mindful that insurance contracts are drafted by insurance companies, courts construe such contracts liberally to favor the insured. Exclusions and limitations on coverage must be clearly stated and the operative terms clearly defined. When language is capable of two reasonable interpretations, courts resolve doubts or uncertainties concerning its meaning in favor of the insured.

*Ky. Emp'rs' Mut. Ins. v. Decker*, No. 2010-SC-000459-WC, 2011 WL 1642183, at *6 (Ky. April 21, 2011) (citing *St. Paul Fire &*

*Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994)).

To put it in even stronger terms:

However, as to the manner of construction of insurance policies, Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured. Exceptions and exclusions are to be strictly construed so as to render the insurance effective. Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured. And since the policy is drafted in all details by the insurance company, it must be held strictly accountable for the language used.

*Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859-60 (Ky. 1992) (citations omitted).

And:

As long as coverage is available under a reasonable interpretation of an ambiguous clause, the insurer should not escape liability, . . . .

*St. Paul Fire & Marine Ins. Co.*, 870 S.W.2d at 227.

Because of Kentucky's strong public policy regarding this matter, authorities from other states are less persuasive than in other contexts.

This Court holds that the Policy now before it is ambiguous in several respects and, when the insured is given the benefit of the ambiguities as required by law, there is coverage for this loss.

These ambiguities occur principally in the "General Agreements" section of the Policy, providing in relevant part:

> 3.   COVERAGE IN THE EVENT OF **YOUR** DEATH
>
> If **you** die, the provisions of this policy will apply to:
>       (a)  any surviving member of **your** household who was covered under this policy at the time of **your** death, but only while that **individual** is a **resident** of, and actually living in, the **dwelling** on the **insured** premises;
>       (b)  **your** legal representative while acting within that capacity; and
>       (c)  any **person** having proper custody of insured property until a legal representative is appointed.
>
>       However, in order to obtain this coverage, any of the people listed in (a), (b) and (c), above, must notify **us** of **your** death.  Coverage under this provision will be provided for a maximum of thirty days after your death, and will terminate if the policy lapses.

(Doc. 26-2, Policy, at 9)(emphasis in original).

In applying paragraph three to the circumstances at hand, coverage continued after Ms. Hamilton's death because Ms. Brake was a "surviving member of [Ms. Hamilton's] household" and was actually living in the insured premises, thus satisfying the definition of subsection (a).

Paragraph three further provides that "in order to obtain [continued] coverage, any of the people listed . . . must notify **us** of **your** death."  However, the Policy fails to provide any time limit in which this notification must be provided, and Defendant was notified of Ms. Hamilton's death when the fire

6

occurred. Therefore, construing this provision in favor of the insured, the Court concludes that Defendant actually received notice of Ms. Hamilton's death as required by this provision.

Defendant relies on the sentence immediately following in support of its argument that coverage had automatically terminated thirty days after Ms. Hamilton's death. This sentence states: "[c]overage under this provision will be provided for a maximum of thirty days after your death, and will terminate if the policy lapses."

However, this sentence is self-contradictory in that it implies that coverage will continue until the Policy lapses. The Policy does not contain a specific provision stating that coverage will lapse on the insured's death. As noted above, coverage continued in favor of a surviving household member or the insured's legal representative, which included Ms. Brake, and the premiums were paid through December. As the fire at issue occurred before the premium period ended, it occurred before the Policy lapsed.

Alternatively, the Court further concludes that Ms. Brake provided Defendant with notice under the Policy when the Policy's provisions are construed in favor of the insured. The Policy's Notice Provision states:

    4.   NOTICE TO **US**

> Any notice required by this policy may be given by, or on behalf of, the **insured** to **our** authorized agent within this state.  If that notice contains sufficient information for **us** to identify the **insured**, **we** will consider it notice to **us**.

(Doc. 26-2, Policy, at 9)(emphasis in original).

It is undisputed that Defendant's "agent within this state" received personal delivery of a newspaper in which an obituary submitted by Ms. Brake fully identified Ms. Hamilton and provided notice of her death.  The Policy does not explicitly require any particular type of notice, and so when it is construed in favor of the insured, the notice given in this manner was sufficient.[4]

Further, the Cancellation and Modification Provision provides in relevant part:

> After this policy has been in effect for 60 days . . . it may be cancelled by **us** for one or more of the following reasons and then only by mailing written notice to **you** . . . stating when, not less than 75 days thereafter, such cancellation shall be effective:
> . . .
>     3.   the occurrence of a change in the risk which substantially increases any any hazard insured against after insurance coverage has been issued or renewed;
> . . .
>     5.   we are unable to reinsure the risk covered by the  policy.
>
> If **we** decide to cancel this policy, the notice will state:
>     1.   the effective date of the cancellation; and
>     2.   the actual reason for cancellation.

---

[4] Or, to put it another way, Defendant received constructive notice.  *Cf. Ramsey v. Allstate Ins. Co.*, 416 F. App'x 516 (6th Cir. 2011).

8

(Doc. 26-2, the Policy, at 37)(emphasis in original).

In the eyes of the Court, this last clause is of critical importance because, when properly construed, it assures Defendant's insureds that they will receive actual notice of any cancellation and be given 75 days to seek other insurance.

Therefore, in light of the Policy's ambiguities, the Court concludes that the Policy provides coverage for the fire loss at issue.[5]

**C.    The Reasonable Expectations Doctrine**

Further, the Supreme Court of Kentucky has adopted the "reasonable expectations doctrine" in interpreting insurance policies.

This doctrine was first enunciated in *Ohio Casualty Insurance Co. v. Stanfield*, 581 S.W.2d 555, 559 (Ky. 1979), as described in *Simon v. Continental Insurance Co.*, 724 S.W.2d 210 (Ky. 1986):

> The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation.
> . . .
> The doctrine of reasonable expectations is used in conjunction with the principle that ambiguities should

---

[5] Defendant at first made the argument that there was increased risk because after Ms. Hamilton's death, the property was no longer owner-occupied. However, as it later acknowledged, under Kentucky law, the title to real property vests in the heirs immediately upon the death of the owner.

>be resolved against the drafter in order to circumvent the technical, legalistic and complex contract terms which limit benefits to the insured.

*Id*. at 212-13 (quoting R.H. Long, *The Law of Liability Insurance*, § 5.10B).

The Court holds that the insured here could reasonably expect that coverage for this fire would not be denied under the circumstances described herein.

## *Conclusion*

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that:

(1) The Clerk of Court shall note Defendant's proper name in the case caption of this proceeding;

(2) Defendant's Motion for Summary Judgment (Doc. 26) be, and is hereby, **DENIED**;

(3) Plaintiff's Motion for Summary Judgment (Doc. 28) be, and is hereby, **GRANTED**; and

(4) Not later than 15 days from the date of entry of this Order, the parties shall confer and submit an agreed amount for the judgment herein, if agreement can be reached. Defendant shall not be deemed to have waived its right to appeal by agreeing to the amount of the judgment. Failing such agreement,

the Court will set a hearing to determine the amount of the judgment.

This 29th day of May, 2012.



Signed By:
William O. Bertelsman  WOB
United States District Judge

11